# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SOUTHERN REALTY           :
MANAGEMENT, INC., and     :
DUNWOODY FOREST           :
ASSOCIATES, LLC,          :
                          :
    Plaintiffs,         :
                          :     CIVIL ACTION NO.
    v.                  :     1:08-CV-0572-JOF
                          :
ASPEN SPECIALTY INSURANCE :
COMPANY and HOMELAND      :
INSURANCE COMPANY         :
OF NEW YORK,              :
                          :
    Defendants.         :

## OPINION AND ORDER

The instant matter is before the court on Defendant Homeland Insurance Company of New York's ("Homeland") Motion to Amend Opinion and Order Denying Motion for Judgment on the Pleadings [63],[1] the parties' Motions for Leave to File Excess Pages [65,

---

[1] On October 27, 2008, this court issued an Opinion and Order [60] denying Motion for Judgment on the Pleadings [32]. That order indicated that the Motion for Judgment on the Pleadings was filed by both Aspen and Homeland. Homeland contends that it was not a part of this motion. Homeland requests that this court amend its Opinion and Order to correct this factual inaccuracy. The court GRANTS Homeland's request. The court finds that its Opinion and Order [60] applies only to Aspen and not to Homeland.

67, 94],[2] Defendant Homeland's, Defendant Aspen Speciality Insurance Company's ("Aspen"), and Plaintiffs' Southern Realty Management ("Southern") and Dunwoody Forest Associates, LLC's ("Dunwoody") Motions for Summary Judgment [70, 73, 78], and Plaintiffs' Motion for Oral Argument [76].

## I. Background

The instant matter is an insurance dispute arising out of a fire at the Copper Mill apartment complex in Gwinnett County, Georgia on September 30, 2006. Plaintiff Southern operated and managed Copper Mill for Plaintiff Dunwoody from October 2001 to October 31, 2006. Southern insured Copper Mill with a primary policy for $2,500,000 in coverage per occurrence from Defendant Aspen and an excess policy for $52,712,348 in coverage per occurrence from Defendant Homeland for the period between December 1, 2005, and December 1, 2006.

On July 24, 2006, Southern entered into an agreement to sell Copper Mill to Baskey Copper Mill Apartments, LLC ("Baskey"). On September 30, 2006, before the sale could take place, the fire at issue destroyed twenty rental apartment units in Copper Mill building 6855, resulting in alleged property losses, business income losses, and costs for emergency services, demolition, and debris removal. Southern and Baskey ultimately executed the sale

---

[2]For good cause shown, the court GRANTS the parties' Motions for Leave to File Excess Pages [65, 67, 94]. The court notes, however, that it does not grant all motions for leave to file excess pages as a matter of form and encourages the parties to be judicious with their page usage in the future.

on October 31, 2006, and Southern assigned all the rents and leases for Copper Mill to Baskey. At present, neither Southern nor Baskey has rebuilt building 6855.

Following the fire, a coverage question arose between Plaintiffs and Defendants. Aspen retained Associated Claims Management, Inc. ("ACM"), and adjuster Christopher Koerner to assist it with the adjustment of the loss. Southern hired adjuster Jerry Brasher to assist it. On January 10, 2007, Brasher submitted Sworn Statements in Proof of Loss regarding the Copper Mill fire to Aspen and Homeland. Plaintiffs estimated their covered losses to be $2,770,815.75, calculated as $2,310,640 to replace the destroyed building, $254,400.75 for foreseeable emergency services such as demolition and debris removal, and $215,775 in rental income loss minus Plaintiffs' $10,000 deductible. (H. MSJ, at Ex L). The Proof of Loss stated the following question: "Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except." (*Id.*). Plaintiffs' response was "no exceptions." (*Id.*). Plaintiffs did not indicate that they had sold the Copper Mill apartment complex to Baskey on October 31, 2006.

On January 22, 2007, Koerner responded to Plaintiffs' Proof of Loss on behalf of Aspen. Koerner rejected Plaintiffs' Proof of Loss and demanded documentation supporting Plaintiffs' loss figures as well as "a complete copy of the closing package, sales contract and amended sales contract and all other agreements between the buyer and seller which have

3

relevance to Copper Mill Apartments." (Aspen MSJ, Ex. D, at Ex A). Koerner's letter referenced Plaintiffs' duties under the Aspen policy to cooperate with any investigation and warned Plaintiffs that if they did not appropriately respond, Aspen would not be able to accept their Proof of Loss.

On March 7, 2007, Homeland issued a letter to Southern acknowledging receipt of its Proof of Loss, notifying Southern that it had not provided sufficient documentation to allow Homeland to proceed with evaluation of Southern's claim, and advising Southern that it would hold the Proof of Loss in abeyance until Southern complied with Aspen's request for supporting documentation. On March 27, 2007, Plaintiffs, through Brasher, responded to Aspen's request for additional information. Plaintiffs agreed to provide Aspen with the warranty deed illustrating the sale of Copper Mill between Plaintiffs and Baskey, but Plaintiffs refused to provide any additional documents regarding the sale, claiming such documents were confidential and unnecessary for the consideration of the insurance claim. On April 17, 2007, Homeland issued a letter to Southern rejecting its Proof of Loss and again demanding additional documentation. On May 4, 2007, Brasher sent a formal demand letter to Koerner at the addresses of Aspen and ACM and demanded payment under the Aspen policy. Aspen responded to this demand on August 10, 2007, again asking Brasher for information about the Baskey sale and other documentation. Aspen again warned Plaintiffs that they were not complying with the terms of the policy and their Proof of Loss

4

AO 72A
(Rev.8/82)

and demand could not be accepted. On October 11, 2007, Aspen sent a letter directly to Mr. C.A. Roberts at Southern, reiterating Aspen's demands to Brasher. On December 13, 2007, Plaintiffs' counsel sent a letter to Koerner and ACM. Plaintiffs' counsel reiterated that Plaintiffs considered the sales contract and other documents relating to the Baskey transaction to be confidential and unnecessary for Aspen's consideration of Plaintiffs' claim. Counsel again demanded that Aspen explain why it needed these documents and what provision in the policy gave it the right to request them. Counsel also asked Aspen to identify a provision in its policy allowing it to reject Plaintiffs' Proof of Loss. Plaintiffs ultimately turned over the sales documents pursuant to a confidentiality agreement on September 18, 2008, during discovery in the instant case.

On January 11, 2008, Southern instituted the instant action against Aspen and Homeland alleging bad faith refusal to pay under O.C.G.A. § 33-4-6[3] and breach of contract

---

[3] In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer. . . .

O.C.G.A. § 33-4-6(a).

and demanding attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11.[4] The parties dispute (1) whether the Aspen policy provides blanket or scheduled coverage;[5] (2) the amount necessary for blanket or scheduled coverage;[6] (3) whether the Defendants were justified in disputing coverage or whether they acted in bad faith; and (4) whether Plaintiffs complied with all terms of the Aspen and Homeland policies. Homeland filed its Motion for Summary Judgment on November 20, 2008;[7] Plaintiffs filed their Motion for Partial

---

[4] The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

O.C.G.A. § 13-6-11.

[5] Plaintiffs contend that the Aspen policy provided blanket coverage, or in other words they are entitled to the full $2,310,640 replacement value of building 6855. Defendants contend that Plaintiffs' coverage is limited by the schedule of values that Plaintiff submitted when it applied for coverage. The schedule of values valued building 6855 at $931,000.

[6] The parties disagree about whether Plaintiffs must replace the building before obtaining an insurance pay out in order to get full replacement coverage. The parties dispute whether Plaintiffs are entitled to lost business income after October 2006 when they sold the complex. The schedule of values limits lost rent and extra expense coverage to $176,495 while Plaintiffs claim more than $200,000 in emergency services such as debris removal alone.

[7] Homeland contends that it is entitled to summary judgment because (1) Plaintiffs' damages pursuant to scheduled coverage do not exceed Homeland's attachment point of $2,500,000; (2) Plaintiffs failed to file suit prior to the expiration of the twelve-month contractual suit limitation period in the Homeland policy; (3) Plaintiffs failed to comply with the conditions in the Homeland policy regarding disclosure and providing material information; and (4) Homeland is not subject to bad faith penalties under O.C.G.A. § 33-4-6

6

Summary Judgment five days later and moved for oral argument;[8] and Aspen filed its Motion for Summary Judgment on December 1, 2008.[9] The parties moved for relief on multiple grounds. This court finds, however, that this dispute may be resolved in its entirety by considering whether Plaintiffs complied with the terms of the Aspen and Homeland policies.

## II. Discussion

The issue before the court is whether Plaintiffs breached their insurance agreements with Defendants by failing to comply with material terms.

Under Georgia law, "[a]n insurer is entitled to require its insured to abide by the policy terms, and the insured is required to cooperate with the insurer in investigation and

---

as a matter of law because Plaintiffs' demand was not sufficient and Homeland had justifiable grounds for disputing coverage.

[8]Plaintiffs request that the court enter a judgment in their favor finding that the Homeland and Aspen policies provide (1) blanket rather than scheduled coverage, (2) on a replacement cost basis, (3) with an occurrence limit of $55,212,348. In the alternative, if the court finds that the Homeland and Aspen policies provide scheduled coverage, Plaintiffs ask the court to establish the occurrence limit for the Copper Mill location at either $13,551,366 or $14,968,343, rather than at $941,000 as Defendants contend.

[9]Aspen contends that it is entitled to summary judgment on Plaintiffs' breach of contract claim because (1) Plaintiffs refused to provide material documents necessary to Aspen's investigation of Plaintiffs' claim; (2) Plaintiffs made material misrepresentations in their proof of loss and discovery documents; and (3) Plaintiffs assigned all of their rights to the Aspen policy and its proceeds. Aspen maintains that the court should grant summary judgment as to Plaintiffs' bad faith refusal to pay claim because Plaintiffs' allegations of bad faith are unfounded.

7

resolution of the claim." *Farmer v. Allstate Insurance Company*, 396 F. Supp. 2d 1379, 1382 (N.D. Ga. 2005) (Thrash, J.), *quoting Diamonds & Denims, Inc. v. First of Georgia Insurance Co.*, 203 Ga. App. 681, 683 (1992). The "conditions set out in [a] policy contract are an essential part of the consideration for the insurer assuming the risk and the insured becomes bound by those conditions by his acceptance of the policy contract." *Hill v. Safeco Insurance Co. of Am.*, 93 F. Supp. 2d 1375, 1384 (M.D. Ga. 1999). A policy requirement that requested documentation be provided is a condition precedent to an insured filing an action against its insurer, and such conditions precedent are binding against the insured under Georgia law. *Id.* at 1383.

Both Plaintiffs' Aspen Policy and Homeland Policy require that Plaintiffs submit a sworn Proof of Loss, cooperate with any investigation and settlement, and allow their books and records to be examined. (Aspen MSJ, Ex. A at Bldg. Pers. Prop. Cov. Form § (E)(3)(a)(6)-(8), Com. Pol. Cond. § C; H. MSJ, Ex. F at Ex. Prop. Cond. §§ 2, 9 ). Both policies state that coverage is void for fraud or if the insured conceals or misrepresents a material fact concerning coverage, the covered property, a claim for coverage, or the insured's interest in the covered property. (Aspen MSJ, Ex A at Comm'l Prop. Cond. §§ A, D) (H. MSJ, Ex. F at Ex. Prop. Cond. § 1 ). Defendants contend that Southern has violated these policy provisions by (1) concealing the Baskey sale on its Proof of Loss, and (2)

8

refusing to cooperate with Defendants by turning over all sale documents related to the Baskey sale.

Georgia courts have barred plaintiffs' claims for misrepresenting matters in a proof of loss and for refusing to provide requested information. Under Georgia law, an insurer has a compelling interest in and right to an accurate proof of loss. *Woods v. Independent Fire Ins. Co.*, 749 F.2d 1493, 1497 (11th Cir. 1985). In *Woods*, the plaintiff transferred his single family dwelling to his mother in fee simple to avoid his wife claiming the property in divorce proceedings. 749 F.2d at 1494. He continued to live in the house and pay his insurance premiums, and he did not inform the insurance company about the change in title. *Id.* Ultimately the property burned and the plaintiff was required to submit a sworn proof of loss. *Id.* In doing so, he stated that his interest in the property at the time of the loss was 100% and that no other person had obtained any interest in the property since the policy had been issued. *Id.* at 1495. The court found that the plaintiff's misrepresentation was material and ruled in favor of the insurer. The court reasoned that the insurance company was entitled to the facts and to investigate a possible defense of lack of insurable interest, whether or not that defense was ultimately viable, before it paid the proceeds to one of two possible claimants. *Id.* at 1496. The court found it irrelevant that the plaintiff's motive was not to defraud the insurance company but rather to put the property beyond the reach of his

9

wife. *See id.* (Fraud is "not lessened because the motive that induced it was something in addition to the possible injury to them that it might work.").

The Georgia Supreme Court addressed an insured who withheld information in *Halcome v. Cincinnati Insurance Company*, 254 Ga. 742 (1985). There, a family filing a claim arising out of an automobile accident refused to provide their insurance company with information regarding their income and sources of income, financial accounts, past criminal convictions, and tax returns on the grounds that the information sought was irrelevant to the claim under investigation and of a private nature. *Halcome*, 254 Ga. at 743. The court found that there was evidence of possible fraud; the information requested by the insurance company was relevant; the plaintiffs had no basis for refusing to furnish it; and as such the plaintiffs had breached the insurance contract and could not recover. *Id.* Under the holdings in *Halcome* and *Woods*, Plaintiffs may not recover if the proof of loss and the sales materials demanded by Defendants were called for under Plaintiffs' policies and the October 2006 sale to Baskey was material to the issue of coverage.

As the provisions set out above indicate, Plaintiffs' policies clearly required them to provide a sworn proof of loss and any books and records demanded by Defendants. Thus, the only remaining issue is whether these items were material to Plaintiffs' claims for coverage. With respect to insurance claims, Georgia courts take "a broad view of materiality." *See Meyers v. State Farm*, 801 F. Supp. 709 (N.D. Ga. 1992) (finding financial

10

misrepresentations material because policy demanded provision of financial information during examination about loss and provided for policy to be void if anything misrepresented during examination). Under Georgia law, materiality is generally a mixed question of law and fact; however, materiality can be properly decided as a matter of law by the court on summary judgment if "reasonable minds could not differ on the question." *Woods*, 749 F.2d at 1496. Further, the existence of an insurable interest is always material. *See id.* ("Reasonable minds cannot differ on the materiality of the misrepresentation made here because it went to the core factor of insurable interest, which is not a mere nicety or a matter of administrative convenience. . . . [but] a keystone of the concept of insurance.").

Defendants claim that the October sale to Baskey is material to coverage because (1) Plaintiffs sought lost business income for time period after the sale and assignment of rents; (2) Plaintiffs might have assigned the policy to Baskey during the sale giving Plaintiffs no insurable interest; and (3) Plaintiffs were claiming cash value of the building.[10] Plaintiffs, without explanation, contend that the sales documents were not necessary for Defendants to resolve their claim. Plaintiffs maintain that they were justified in withholding documents they believed to be confidential because Defendants did not explain why they needed these documents. The court is not persuaded by Plaintiffs' arguments. It is clear from the court's

---

[10]Under Georgia law, the measure of an insurer's liability for actual cash value can be determined by a comparison of the value of the property before and after the loss. *Am. Casualty Co. of Reading, PA. v. Parks-Chambers, Inc.*, 111 Ga. App. 568 (1965). The sales price and sales documents could have indicated the value of the property after the loss.

11

holding in *Halcome* that an insured may not unilaterally determine that some of its books and records are not necessary to an investigation, nor may they withhold them on the grounds of confidentiality. Also, an insurer is under no obligation to provide an explanation for its requested documents absent policy language requiring it to do so. *Hill*, 93 F. Supp. 2d at 1384. The court finds that reasonable minds could not differ and the information about the 2006 sale to Baskey was material. Defendants had a right to inspect Plaintiffs' books and records under the relevant policy. Plaintiffs refused to provide material information that Defendants had a right to demand. As such, Plaintiffs breached the terms of the Aspen and Homeland policies and are barred from recovering on their claim.

### III. Conclusion

Defendants' Motions for Summary Judgment are GRANTED [70, 78]. Plaintiffs' Motion for Partial Summary Judgment is DENIED [73]. Plaintiffs' Motion for Oral Argument [76] is DENIED as MOOT. The Clerk of Court is DIRECTED to dismiss Plaintiffs' claims in their entirety and to close this matter.

**IT IS SO ORDERED** this 28th day of April 2009.

                                               s/ J. Owen Forrester
                                               J. OWEN FORRESTER
                               SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)